UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| RAYMOND A. HOFF and NANCY B. HOFF,<br>  Plaintiffs,<br><br>v.<br><br>AVCO CORPORATION, et al.,<br>  Defendants. | )<br>)<br>)<br>)<br>) C.A. No.: 3:24-cv-00206<br>)<br>)<br>)<br>)<br>) |

## **DEFENDANT RAYTHEON TECHNOLOGIES CORPORATION'S NOTICE OF REMOVAL**

Defendant Raytheon Technologies Corporation (improperly named as "Raytheon Technologies Corporation, f/k/a United Technologies Corporation, Individually and as successor-in-interest to Pratt & Whitney) (hereinafter "RTC"), by and through its undersigned attorneys hereby removes this action from the Superior Court, State of Connecticut, Judicial District of Fairfield at Bridgeport, based on federal question pursuant to 28 U.S.C. §§ 1331 and 1442(a)(1). In support of this Notice of Removal, RTC states:

## **NATURE OF THE CLAIMS**

1. On or about January 18, 2024, Plaintiffs filed their Complaint in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport, against RTC and other defendants. True and correct copies of all process, pleadings, and orders served upon RTC are attached to this Notice as **Exhibit A**.

2. Plaintiffs served RTC with the Complaint and Summons by mail on January 19, 2024.

3. Plaintiffs assert state law product liability (Count I), "Recklessness" (Count II), and Loss of Consortium (Count III) claims against all of the named Defendants, including RTC.

4. In their Complaint, Plaintiffs allege that Plaintiff, Raymond A. Hoff ("Mr. Hoff"), developed "asbestos-related mesothelioma and other asbestos-related pathologies" as a result of exposure to asbestos while serving in the United States Air Force from 1969 until 1993, and during his work at Dover Air Force Base in Delaware from 1996 until 2018. (**Ex. A**, Pls.' Compl., ¶ 4.) Plaintiffs further allege Mr. Hoff's "employer or employers were engaged in various activities in which they bought and/or installed asbestos and/or asbestos products and materials" (*Id.* at ¶ 3), and these products "were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, and/or sold by the Defendants." (*Id.* at ¶ 5).

5. As to RTC, Plaintiffs' claims are based on Mr. Hoff's alleged inhalation of asbestos fibers from military equipment—Pratt & Whitney military aircraft engines—supplied to the United States Air Force for military use.[1]

6. Any and all equipment produced and supplied by RTC for use by the Air Force was for military use and was specifically designed and manufactured in accordance with specifications provided by the Air Force and was designed and built under the direction and control of the military and its officers.

7. Thus, Plaintiffs' claims against RTC arise out of RTC's conduct acting under a federal officer and under color of such office. A case may be removed from state to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official

---

[1] Pratt & Whitney is an unincorporated division of UTC that manufactures aviation engines. Plaintiffs have specifically sued RTC "individually and as successor-in-interest to Pratt & Whitney."

or individual capacity for any act under color of such office." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (citing 28 U.S.C. § 1442(a)(1)).

8. Accordingly, this case is removable based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).

**TIMELINESS**

9. This Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable. *See* 28 U.S.C. § 1446(b). RTC received the Complaint via mail on January 19, 2024. This removal of the action, which is being filed within 30 days of RTC's receipt of the Complaint, is therefore timely under 28 U.S.C. § 1446(b).

**JURISDICTION AND VENUE**

10. Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds for Removal.

11. Venue is proper in the United States District Court for the District of Connecticut as the state court action, which is subject to this removal petition, was filed with the Superior Court within this State.

12. Furthermore, § 1442(a) authorizes removal without the consent of any other defendant. *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (providing that 28 U.S.C. § 1442(a)(1) provides a statutory exception that "allows a federal officer [or any person acting under that officer] independently to remove a case to federal court even though that officer is only one of several named defendants"); *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) (finding that § 1442 "represents an exception to the general

rule . . . that all defendants must join in the removal petition"); *Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 (D. Md. 2014) ("Unlike removal under § 1441, under § 1442(a) the other defendants need not join in or consent for removal to be proper.").

## **GROUNDS FOR REMOVAL**

13. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is removable to this Court by RTC pursuant to the provisions of 28 U.S.C. § 1442(a)(1) in that it is a civil action in which plaintiffs' alleged right to relief necessarily depends on the resolution of a substantial question of federal law. Federal officer removal extends to persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed. *Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 329 (D. Conn. 2008) (citing *Isaacson*, 517 F.3d at 133).

14. "Federal officers, and their agents, may remove cases based on acts performed under the color of their federal office if they assert a colorable defense." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-81 (7th Cir. 2012); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); *see also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996).

15. The Supreme Court has mandated a generous interpretation of the federal officer removal statute in favor of removal. *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969); *see also Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (noting that the Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal officer removal] statute.").

**A.**     **RTC is a "person" and was "acting under" a federal officer.**

16. At all relevant times, RTC was a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *Isaacson*, 513 F.3d at 135 (1 U.S.C. §1 establishes presumption that "person" includes

corporate persons); *Ruppel*, 701 F.3d at 1181 (finding that a corporate defendant was a "person"); *see also Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

17. An entity 'acts under' a federal officer when it 'assists, or helps carry out, the duties or tasks of the federal superior.'" *Isaacson*, 513 F.3d at 137. An example is where there is "close supervision of the private entity by the Government." *Pantalone*, 576 F. Supp. 2d at 330. In *Isaacson,* the Second Circuit concluded that this prong was satisfied because:

> [u]nlike the tobacco companies in *Watson*, Defendants received delegated authority; they were not simply regulated by federal law. Through their contracts with the Government to produce Agent Orange, the chemical companies "assisted" and "helped carry out the duties or tasks of" officers at the Department of Defense. Defendants thus had the "special relationship" with the Government required by the "acting under" prong.

*Isaacson*, 513 F.3d at 137.

18. Here, Plaintiffs' claims against RTC are based on products that were designed and manufactured for the United States military under contract with the United States government. This equipment was manufactured pursuant to reasonably precise specifications provided by the United States to RTC. (**Exhibit B**, Affidavit of John C. Sumner, ¶¶ 2, 5, 9). RTC manufactured the equipment in accordance with the military's specifications, and provided these products which, "in the absence of [RTC], the Government would have had to produce itself." *See Isaacson*, 513 F.3d at 137.

    **B.**  **RTC was acting "under color of" federal office.**

19. The Second Circuit has instructed that the "under color of" prong is tantamount to a causation requirement and "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 513 F.3d at 137.

20. "This is not a difficult burden to meet: to show causation, non-governmental corporate defendants must only establish that the act that is the subject of a plaintiff's attack . . .

5

occurred while defendants were performing their official duties." *Pantalone*, 576 F. Supp. 2d at 330. In *Pantalone*, this Court concluded that "[b]ecause the action challenged by Plaintiff—namely, the use of hazardous asbestos—occurred while Buffalo Pumps was carrying out its Navy-directed duties, the necessary causal requirement is met." *Id.* at 330-31.

21. Here, RTC, during all aspects of its design and manufacture of military aircraft products Mr. Hoff alleges he encountered, performed its work under the immediate supervision of the United States. (**Ex. B** at ¶ 7). This supervision and control was exercised through contract documents, design and construction drawings, written specifications, and personal oversight of RTC's work by engineers and military specialists on-site at RTC. (*Id.*) No aspect of the development, manufacture, and testing of the aircraft products intended for use by the United States escaped this close control. (*Id.*) The United States military exercised ultimate responsibility for making the final decisions with respect to aircraft component design. Engineers and military specialists were present at RTC to review and approve the design and manufacture of products that were produced for the United States military. (*Id.* at ¶ 10). These military specialists stationed on-site at RTC controlled the design and manufacture of any aircraft products produced at RTC for the United States Navy. (*Id.* at ¶ 7).

    **C.**    **RTC has shown a "colorable" federal defense.**

22. Lastly, a defendant can remove under the federal officer removal statute only if it raises a colorable federal defense.

23. To be "colorable," the defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court. *Isaacson*, 513 F.3d at 139. "Requiring a private contractor seeking federal officer removal to show a "colorable" claim of state law preemption violates the fundamental principle that "[t]he officer need not win

his case before he can have it removed." *Graves v. 3M Co.*, 17 F.4th 764, 773 (8th Cir. 2021) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  Judge Robreno of the Eastern District of Pennsylvania described the District Courts' role as:

> [w]hile the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. It is the sufficiency of the facts stated—not the weight of the proof presented—that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.

*Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010).

24. RTC asserts that it is entitled to the defense set forth in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).  Namely, a government contractor, such as RTC, is not subject to liability under state tort law when the United States approved the product's general design, the product conformed to that design, and the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.  *See Isaacson*, 517 F.3d at 138; *see also In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 88 (2d Cir. 2008); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1185-86 (7th Cir. 2012).

25. Should plaintiffs file a motion to remand this case, RTC respectfully requests an opportunity to respond more fully in writing, but offers the following at this time in support of the government contractor defense:

    a. The United States Military provided extensive and detailed specifications for RTC products intended for United States use.  (*See generally* **Ex. B**).

7

    b. The United States Military had detailed prints and drawings of every part used in RTC products Plaintiff would have encountered. These prints disclosed all materials contained in each part. (*Id.*)

    c. The United States Military knew of, and approved, all materials and all parts contained in RTC aircraft components intended for use by the United States. (*Id.*)

    d. Any written materials, such as warnings or product manuals, that accompanied any products supplied by RTC for the United States were similarly controlled and specified by the United States Military. (*Id.*)

    e. Each product manual was subjected to extensive review and approval by the United States Military. (*Id.*)

    f. Contractors like RTC were prohibited from including any type of warning or precautionary statement on or with its aircraft components without the prior consent and approval of the United States Military. (*Id.*)

    g. The United States dictated or otherwise controlled the nature and the content of the product warnings. (*Id.*)

26. RTC raises a colorable federal defense to this action under government contractor immunity in that the United States, including military specialists, controlled the design and manufacture of any RTC equipment made for the United States, including any written materials, such as warnings or product manuals, which were controlled and approved by U.S. Air Force representatives. (*See* **Ex. B**). The United States provided, scrutinized, and approved extensive and detailed performance and construction specifications for the equipment intended for military use. The U.S. government had state of the art knowledge of the hazards of asbestos-containing components of its equipment at all times relevant to this action. (**Exhibit C**, Affidavit of William

Ringo). A causal nexus exists between plaintiffs' claims in this action and the acts allegedly taken by RTC under the direction of federal officers. Plaintiffs' claims against RTC arise from Mr. Hoff's alleged inhalation of asbestos fibers during his work with or around RTC aircraft components while he served in the United States Air Force and while working as a civilian at an Air Force base performing the same work with the same products. (**Ex. A** at ¶ 4).

27. This equipment was designed and manufactured under strict government control and pursuant to precise specifications that were provided by, scrutinized by, and/or revised by, and in all cases approved by the military. (*See* **Ex. B**).

28. RTC's alleged actions are inseparable from the government specifications, regulations, and oversight, and a clear causal nexus exists between Plaintiffs' claims and RTC's alleged acts performed under color of federal office. *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Marley v. Elliott Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268 (C.D. Cal. 1998); *Crocker v. Borden*, 852 F. Supp. 1322 (E.D. La. 1994); *Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 587 (N.D. Cal. 1993); *Pack v. AC&S, Inc.*, 838 F. Supp. 1099 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992).

29. Plaintiffs' claims against RTC are therefore affirmatively barred by government contractor immunity as set forth by the United States Supreme Court in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). Pursuant to this federal defense, military equipment manufacturers cannot be held liable under state law for any injuries caused by the equipment they built for the U.S. military when: (a) the United States approved reasonably precise specifications; (b) the equipment conformed to these specifications; and (c) the equipment supplier warns the military about any hazards involved in the use of the equipment that are known to the equipment supplier

but not known to the military. *See Boyle*, 487 U.S. at 512; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1001 (7th Cir. 1996). "The contractor's duty to warn under the third prong of *Boyle* extends only to those dangers in the use of the equipment which are unknown to the government." *Oliver*, 96 F.3d at 1001.

30. Analyzing the *Boyle* and *Oliver* factors with the facts above shows (a) that RTC designed and manufactured the military equipment in question under strict government supervision and control and that the United States approved reasonably precise specifications for the manufacture of the RTC products; (b) the equipment conformed to those specifications, and (c) the United States had state of the art knowledge and was aware of potential health hazards of working with or around asbestos-containing materials dating back to the 1930s. Thus, RTC would not have had knowledge of any hazards associated with the potential inhalation of respirable asbestos fibers released from products which was not already known to the United States. RTC has more than a colorable federal defense to this state action under government contractor immunity. *See Blackman v. Asbestos Defendants (BHC)*, No. C-97-3006, 1997 WL 703773, at *3 (N.D. Cal. Nov. 3, 1997) (finding that defendant contractor had no duty to warn the Navy of dangers of asbestos use in military equipment where the contractor was not an asbestos manufacturer and "had no greater opportunity to know of the dangers of asbestos in the 1970s than did the USAF"); *see also Boyle*, 487 U.S. at 512; *Oliver*, 96 F.3d at 1001-02; *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *Marley v. Elliott Turbomachinery Co., Inc.*, 545 F. Supp. 2d 1266, 1271 (S.D. Fla. 2008); *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268 (C.D. Cal. 1998); *Crocker v. Borden*, 852 F. Supp. 1322 (E.D. La. 1994); *Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 587 (N.D. Cal. 1993); *Pack v. AC&S, Inc.*, 838 F. Supp. 1099 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992).

D. **Plaintiffs' self-serving "Disclaimer of Federal Jurisdiction" is inconsequential.**

31. In an apparent attempt to thwart removal of this action, Plaintiffs, in their Complaint, plead that they:

> hereby waive[] any claims for Breach of Warranty due to Design Defect with respect to any product that was sold to the United States Military via a written contract directly with and between the United States Government and the Defendant. With respect to such contracted military aircraft and equipment, Plaintiff only alleges that the Defendants failed to warn the Plaintiff of the presence of asbestos and/or dangerous nature of the products to which Plaintiff was exposed during his employment and military services, and that the contract(s) with the Government did not preclude the Defendants from complying with their state law duty to warn. There is no evidence that the United States Government, or any of its military branches, specifically instructed manufacturers from which it purchased asbestos-containing products not to warn about the health hazards associated with exposure to asbestos, and therefore there can be no valid claim to federal jurisdiction pursuant to federal enclave, federal officer or federal contractor provisions of the United States Code.

**Ex. A** at ¶ 15(e).

32. Plaintiffs' disclaimer does nothing to preclude this Court's subject matter jurisdiction for several reasons.

33. First, the disclaimer is mere factual allegations and this Court "must credit the Defendants' theory of the case" when determining whether the federal officer removal statute applies. *See Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 331 (D. Conn. 2008) (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). The applicability of Plaintiffs' disclaimer here turns on the core question of whether Defendants prove their entitlement to a federal defense. Numerous Courts have found that this artful attempt at circumventing federal jurisdiction is ineffective (and in some cases, bad faith). *See, e.g.*, *Reinbold v. Advanced Auto Parts, Inc.*, No. 18-CV-605-SMY-DGW, 2018 WL 3036026, at *3 (S.D. Ill. June 19, 2018) ("[D]isclaimer is circular, and does not apply to claims based on all exposure on Navy jobsites, but only those exposures which, in Plaintiff's estimation, occurred as a result of [defendants']

operation within the bounds of the federal officer removal statute."). Since, at this stage, RTC need only state facts which support a colorable government contractor defense, this case is removable on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).

34. Second, Plaintiffs' disclaimer is expressly limited to their breach of warranty claims and does not limit their remaining strict liability and negligence claims. The existence of a single removable claim allows removal of the entire action. *See* 28 U.S.C. § 1441(c); *Lepucki v. Van Wormer*, 765 F.2d 86, 89 (7th Cir. 1985); *see also Nat'l Audubon Society v. Dept. of Water*, 496 F. Supp. 499, 509 (E.D. Cal. 1980).

35. Third, it is well established that the government contractor defense applies to failure to warn claims. *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996). It is also well established that the defense in the failure to warn context does not require evidence of precise specifications relating to warnings. Instead, the defendant must show that: (1) the government exercised its discretion and approved certain warnings, (2) the contractor provided the warnings required by the government, and (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government. *Id.* at 1003-04; *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1185-86 (7th Cir. 2012).

36. "*Boyle* makes clear that government discretion, rather than dictation, is the standard," and where "the [government] considered, reviewed, and determined which warnings to provide, the government's exercise of discretion necessarily 'conflicts' with the Contractors' 'duty to warn under state law.'" *Getz v. Boeing Co.*, 654 F.3d 852, 866-67 (9th Cir. 2011) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)); *see also Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014) (defendant need only show that the government "controlled the nature and the

content of the product warnings"); *Faddish v. Gen. Elec. Co.*, No. 09-70626, 2010 WL 4146108, at *9 (E.D. Pa. Oct. 20, 2010) (contractor must only show exercise of discretion with respect to warnings associated with the product, not express prohibition).

37. Notice of this removal has been filed with the state court and provided to all adverse parties by the initial removing defendants pursuant to 28 U.S.C. § 1446(d).

38. RTC reserves all defenses, including but not limited to challenging whether this court has personal jurisdiction.

WHEREFORE, Defendant Raytheon Technologies Corporation, pursuant to the statutes and authorities identified above hereby removes this action.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Raytheon Technologies Corporation demands a jury trial as to all claims triable in this action.

Respectfully submitted,

The Defendant,
RAYTHEON TECHNOLOGIES
CORPORATION,

*/s/ Carlie S. Seigal*
Carlie S. Seigal (ct30421)
PIERCE DAVIS & PERRITANO LLP
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
cseigal@piercedavis.com

Dated: February 15, 2024

## **CERTIFICATE OF SERVICE**

      I, Carlie S. Seigal, hereby certify that a true copy of the above document was served electronically via e-mail and by regular mail, postage pre-paid on February 15, 2024 to the following Plaintiffs' counsel:

Michael Shepard
Shepard O'Donnell, P.C.
160 Federal Street, 13th Floor
Boston, MA 02110


                                              */s/ Carlie S. Seigal*
                                              Carlie S. Seigal